**SIMMONS et al. v. TANKERS CO., Inc.**

No. 13291.

United States Court of Appeals
Ninth Circuit.

Oct. 31, 1952.

---

David A. Fall, San Pedro, Cal., for appellant.

Lillick, Geary & McHose, William H. Brainerd, Los Angeles, Cal., for appellee.

Before DENMAN, Chief Judge, and HEALY and POPE, Circuit Judges.

DENMAN, Chief Judge.

This is an appeal from a decree in admiralty of the United States District Court for the Southern District of California dismissing an action brought by appellants, seventeen seamen shipped on the United States owned naval tanker Tomahawk, to recover one month's wages for the appellants' alleged discharge before they earned a month's wages. The statute relied upon is 46 U.S.C.A. § 594, providing:

"Any seaman who has signed an agreement and is afterward discharged before the commencement of the voyage or before one month's wages are earned, without fault on his part justifying such discharge, and without his consent, shall be entitled to receive from the master or owner, in addition to any wages he may have earned, a sum equal in amount to one month's wages as compensation, and may, on adducing evidence satisfactory to the court hearing the case, of having been improperly discharged, recover such compensation as if it were wages duly earned."

The facts, so far as pertinent, are that on March 2, 1951, appellants signed shipping articles which had typed therein the following respecting the voyage of the Tomahawk as

"* * * from the Port of Los Angeles, California to a point in the Pacific Ocean to the westward of Los Angeles, California, and thence to such ports and places in any part of the world as the master may direct or as may be ordered or directed by the United States Government, or any department, commission or agency thereof."

The Tomahawk delivered oil to Pearl Harbor and then returned to Los Angeles on March 19, 1951. The seventeen appellants thereupon asked to be released and were released, receiving wages only for the seventeen days of service. On these facts the court below dismissed the action for a month's penalty wages of 46 U.S.C.A. § 594.

The contention of the seamen is that the above shipping articles were for a foreign voyage and that the appellee violated them by returning to the Port of Los Angeles from Pearl Harbor. The appellee contends that the articles are not for a foreign voyage, but were made under a war-time Presidential order made on March 6, 1942, 7 Fed. Register 2477, three months after the Japanese attack on Pearl Harbor. This order continued in force until six months after the termination of war with Japan, 50 U.S.C.A. Appendix, § 621, of which the peace treaty was negotiated in San Francisco on September 8, 1951, subsequent to the time of the voyage here in question.

At the time the order was made, Pearl Harbor was in pressing need for war materials as also were the naval vessels in the southwestern Pacific Ocean. As the law then was, one form of articles was re-

quired for seamen on coastwise voyages[1] and another for foreign voyages.[2] To meet the emergency a third form of articles was provided by the Presidential order. Under that order a vessel sailing from a United States port to Hawaii in the Pacific, or say Puerto Rico and the Virgin Islands in the Atlantic, might be continued to a foreign port or returned to the United States by the direction of the master or of any department, commission or agency of the United States.[3]

That is to say, the articles were for a domestic voyage or a foreign voyage as the action of the master or governmental agencies may determine after leaving the United States. We do not agree that the articles here provided for a foreign voyage which was breached by the vessel's return to the Port of Los Angeles.

The seamen contend that the plain provisions of the President's order are overcome because the vessel's logbook stated that the voyage was "foreign." We do not think that a statement in the log can change the shipping articles or take from the United States agency, here the Commander of the Military Sea Transportation Service, his power to determine that the Tomahawk return to a United States port, which the sailors' shipping articles gave him. Nor can the acts of the seamen in making allotments deprive the Commander of that power. The requirement that the seamen submit to inoculations usually required for a Pacific foreign voyage is but a preparation for a voyage which the seamen have given the Commander to order if he so elects. The same is true of the provision in the articles that "N.M.U. as to bonus and transportation area bonus will apply, which give a bonus for service west of the 180 meridian." This we construe as to apply only if the Commander directs that the vessel shall cross the 180 meridian. It does not require him to make a voyage in which the N.M.U. provisions shall apply.

The decree is affirmed.

---

1.  46 U.S.C.A. § 563.
2.  46 U.S.C.A. § 564.
3.  "March 6, 1942.

"By virtue of the authority vested in me by the provisions of Executive Order No. 8976, dated December 12, 1941 (6 F.R. 6441), and Executive Order No. 9083, dated February 28, 1942 (7 F.R. 1609), I hereby waive compliance with the provisions of section 4511 R.S. as amended (46 U.S.C. 564), and section 2 of the Act of June 19, 1886, as amended (46 U.S.C. 563), to the extent hereinafter set forth:

"(1) So much of section 4511 R.S. as amended, and section 2 of the Act of June 19, 1886, as amended, as requires shipping articles to contain, in writing or in print, particulars as to the nature of the intended voyage or engagement is waived, Provided, That,

"(a) The description of voyages on articles of agreement signed covering the departure of vessels of all categories from United States ports shall read:

"To a point in the * ocean to the ** of *** and thence to such ports and places in any part of the world as the Master may direct or as may be ordered or directed by the United States Government or any Department, Commission or agency, thereof, and back to a final port of discharge **** in the United States ***** for a term of time not exceeding .................... calendar months.

"* Name of ocean

"** Westward, eastward, southward, or northward

"*** Name of port (New York, San Francisco, etc.)

"**** Here may be inserted, if desired, such stipulations as: 'And/or first loading port and/or bunkering port, and the locality where the voyage is to terminate'.

"Frank Knox,
"Secretary of the Navy."
(7 F.R. 2477, 2478)